Cite as 2022 Ark. 103

# SUPREME COURT OF ARKANSAS
No. CR-20-403

| | |
|---|---|
| | **Opinion Delivered:** May 19, 2022 |
| TRACY DUANE WRIGHT | |
| APPELLANT | |
| | APPEAL FROM THE BENTON |
| V. | COUNTY CIRCUIT COURT |
| | [NO. 04CR-18-2394] |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE BRAD KARREN, JUDGE |
| | |
| | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant, Tracy Duane Wright, appeals his convictions of aggravated robbery and theft of property, and his sentencing as a habitual offender. For reversal, Wright argues that (1) there was insufficient evidence to convict him of either charged count, and (2) the circuit court erred by concluding that his earlier Kansas conviction was comparable for sentencing purposes to an Arkansas serious felony involving violence. Because Wright was sentenced to life in prison, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a) (2020). We affirm.

On September 19, 2019, Wright was charged by amended criminal information with one count of aggravated robbery in violation of Arkansas Code Annotated section 5-12-103 (Repl. 2013) and one count of theft of property in violation of Arkansas Code Annotated

section 5-36-103(a) and (b)(3)(A) (Supp. 2017). Citing Wright's two prior residential burglary convictions in Kansas, the State charged that he should be sentenced as a habitual offender pursuant to Arkansas Code Annotated section 5-4-501(d) (Supp. 2017).

A jury trial was held on November 5–6, 2019. Evidence introduced at trial established that Melissa Morrison was working as a cashier at the Dollar General store on Eighth Street in Rogers on November 11, 2018. Morrison testified that a white man wearing a dirty blond wig with twigs in it entered the store and approached the cashier's counter with candy to purchase. Before she could complete the transaction, the man handed her a note and told her to read it. The note instructed Morrison not to touch anything and to open the cash-register drawer and put all the money into a bag that he had. The note indicated that the man had a gun in his waistband, that he would use it, and that the money in the register was not worth her life. Morrison testified that the man lifted his shirt to reveal a handgun in his waistband with the grip exposed and the barrel pointing down into his pants. Morrison said that the gun did not look "real." She balled up the note, threw it back at the man, and ran into the office and closed the door. When Morrison saw on the closed-circuit television that the robber had left the store, she called 911 and reported the incident.

Corporal Jeffrey Lane of the Rogers Police Department was dispatched to the Dollar General immediately after the robbery. Lane testified that he collected the note and a bag that the man had dropped in front of the store. Pamela McDonald, the Dollar General store manager, gave the police surveillance videos of the robbery. The videos showed the robber

enter the store at approximately 9:24 p.m., interact with Morrison, and exit the store going south. The robber was wearing a hat, sunglasses, and gloves.

The day after the robbery, Rogers police officer Joshua Martin responded to a call at Rogers Heritage High School for a report of a firearm found on school property. It turned out to be a broken toy gun that was found near Holly Street, about one hundred yards from the Dollar General. Officer Jeffrey Ochoa of the Rogers Police Department, who was the resource officer at the high school, provided the school's November 11, 2018 surveillance videos to police. The videos showed a person on a bicycle heading south at about 9:25 p.m. and then crossing a field diagonally in the direction of the Guest Inn hotel.

Sunil Panchal testified that he was the manager of the Guest Inn. He provided the hotel's surveillance video that showed a person riding a bicycle toward room 124, which had been rented by Wright. Wright had produced identification when he checked in. Panchal recalled that Wright was tall and had a small bicycle.

Corporal Gerardo Villar of the Rogers Police Department testified that he was the lead investigator for the robbery. He said that he came to believe that the toy gun found at the high school may have been relevant to the robbery because it was found near the Dollar General. In reviewing the school surveillance video, he saw a person riding a bicycle in a southwest direction at a high rate of speed toward the Guest Inn. At that hotel, Villar showed the owner a photo from the video, and he was directed to room 124. No one was in the room, but it had not yet been cleaned and police found the broken tip of a toy gun in the trashcan. The tip of the toy gun found in the hotel room matched the toy gun found at the

3

high school. Police also found a casino card with Wright's name on it, the paper insert from a men's ball cap, and a tag from a men's sweatshirt. Villar testified that he obtained Wright's hotel check-in information that included photo identification of Wright. As part of his investigation, Villar accessed a reporting system that documented a transaction Wright made at Big Brother's Pawn Shop on Eighth Street. Villar observed that, in video obtained from the pawn shop, Wright pawned a bicycle while he was wearing gloves that resembled the ones worn by the robber. Don Gross, who was a Big Brother's employee, confirmed that Wright was the person who pawned the bicycle on November 12, 2018.

Chelsea Phipps and her husband, Shawn Phipps, worked at the CarTime auto dealership on Eighth Street in Rogers. Chelsea testified that she was working there on November 13, 2018, when Wright and a female entered and asked to test drive the cheapest vehicle. Chelsea made a copy of Wright's driver's license and allowed him to test drive a Dodge Dakota pickup truck. When Wright did not return for more than an hour, Shawn reported the vehicle stolen. Thereafter, Wright called and gave Chelsea his female companion's phone number and said that they were going to the bank to get the money and would return in about fifteen minutes. At that point, there had been no sales discussion, and no paperwork had been prepared. Wright did not return. The next day, officer Robert Grigg of the Rogers Police Department spotted the truck on the road sometime after 1:00 a.m. and tried to stop it. Grigg testified that the driver fled, and initially evaded him. The truck was found abandoned a short time later. Officer Christopher Herron of the Rogers Police Department testified that the engine was still warm, and he discovered Wright and a

4

female companion hiding behind air conditioning units at a nearby church. After the truck was recovered, Villar searched the interior and discovered a hat and sunglasses that resembled those worn by the robber at the Dollar General.

The State introduced a recording of a telephone call that Wright made to his mother while he was detained at the Benton County jail. Wright's mother, Denzel Wright, confirmed that she was the person on the line with Wright. Denzel asked Wright what he had done, and he said, "I tried to rob a Dollar General." Denzel asked, "With a gun?" and Wright replied, "toy gun."

Outside the jury's presence, the circuit court considered whether Wright had committed two prior felonies involving violence that would qualify him for sentencing as a habitual offender. The State introduced evidence showing that Wright had been convicted of burglaries in Kansas in 1989 and 1992. Wright testified that his 1989 conviction involved him stealing a piece of equipment from his employer's barn. Despite Wright's testimony, the circuit court concluded that Wright's two Kansas convictions were comparable to an Arkansas residential-burglary conviction and therefore qualified him for sentencing as a habitual offender. The circuit court denied Wright's motions for a directed verdict and submitted the case to the jury, which convicted him of aggravated robbery of the Dollar General store and theft of property for taking the truck from CarTime. He was automatically sentenced as a violent habitual offender to life in prison on the aggravated-robbery charge. The jury sentenced him to seven and one-half years' imprisonment and a $5,000 fine for theft of property. Wright filed a timely appeal.

In his first point on appeal, Wright asserts that substantial evidence does not support his convictions for either aggravated robbery or theft of property. In reviewing a sufficiency challenge, we view the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *McCray v. State*, 2020 Ark. 172, 598 S.W.3d 509. We will affirm a judgment of conviction if substantial evidence exists to support it. *Mabry v. State*, 2020 Ark. 72, 594 S.W.3d 39. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Direct evidence is evidence that proves a fact without resort to inference when, for example, it is proved by witnesses who testify to what they saw, heard, or experienced. *Chatmon v. State*, 2015 Ark. 28, 467 S.W.3d 731. Circumstantial evidence is evidence of circumstances from which a fact may be inferred. *Id.* Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Howard v. State*, 2016 Ark. 434, 506 S.W.3d 843.

We first consider the sufficiency of the evidence supporting Wright's aggravated-robbery conviction. Wright argues that his conviction was based entirely on circumstantial evidence and was consistent with several other conclusions because no witnesses identified

him as the robber, and one eyewitness testified that a male in the area at the time of the robbery was in his early twenties when Wright was forty-seven at the time of the robbery. Wright does not seriously contest that someone robbed the Dollar General store. Instead, he argues that there is insufficient evidence to prove that he was the individual who committed that robbery.

Pursuant to Arkansas Code Annotated section 5-12-103(a)(1), a person commits aggravated robbery if the person commits a robbery and is armed with a deadly weapon, represents by word or conduct that he or she is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person. Ark. Code Ann. § 5-12-102(a) (Repl. 2013). A person commits theft of property if that person knowingly exercises unauthorized control over the property of another person with the purpose of depriving the owner of the property, or if the person obtains the property of another by deception or threat with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a) (Repl. 2013). Physical force is defined as bodily impact, restraint, confinement, or the threat thereof. Ark. Code Ann. § 5-12-101 (Repl. 2013). A firearm is a deadly weapon. Ark. Code Ann. § 5-1-102(4)(A) (Repl. 2013).

With these authorities in mind, we consider the evidence supporting Wright's aggravated-robbery conviction. Video from the Dollar General store, Morrison's testimony,

and the threatening note that demanded money, demonstrate that someone entered the Dollar General store and threatened to use force in an attempt to commit a theft. Because that person represented that he was armed with a deadly weapon, the robbery was an aggravated robbery. There is also evidence demonstrating that Wright was the person who committed the robbery. Wright confessed to his mother that he tried to rob a Dollar General store with a toy gun. In addition to this confession, the record contains other evidence identifying Wright as the robber. Although Morrison could not identify Wright as the robber, she testified that the robber was a white male. Video evidence showed that a person was riding a bicycle on the high school grounds near where a broken toy gun was found. The bicyclist was traveling away from the Dollar General store and toward the Guest Inn where Wright had rented a room. The broken tip matching the toy gun that was recovered at the school was found in the room that Wright rented, as were a paper insert for a men's cap and Wright's casino card. Additionally, the day that Wright left the Guest Inn, he pawned a bicycle while wearing gloves that resembled those that the robber wore. The following day, the truck that Wright had taken from CarTime was involved in a police chase. After the police located the truck, Wright was found hiding nearby, and a hat and sunglasses resembling those that the robber wore were found inside the truck. Viewing this evidence in the light most favorable to the State, substantial evidence supports the jury's verdict finding Wright guilty of aggravated robbery.

Next, we turn to Wright's argument that the evidence was insufficient to support his conviction for theft of property regarding the truck he took from CarTime. Although he

does not dispute taking the truck for a drive, Wright asserts that the State failed to introduce sufficient evidence that he intended to permanently deprive the truck's owner of the property. A person commits theft of property if the person knowingly exercises unauthorized control over the property of another person "with the purpose of depriving the owner of the property[.]" Ark. Code Ann. § 5-36-103(a)(1). A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Wilson v. State*, 2017 Ark. 217, 521 S.W.3d 123. Because intent cannot be proved by direct evidence, the jurors can draw upon their common knowledge and experience to infer it from the circumstances. *Id.*

Evidence at trial established that Wright lied about returning the truck, never returned it, and, when a police officer located the truck the next day and attempted to make a traffic stop, Wright fled. After initially evading authorities, Wright abandoned the truck and attempted to hide. Wright's flight is indicative of his guilt. *Hayes v. State*, 2014 Ark. 104, 431 S.W.3d 882. Although he argues that the fact that he gave CarTime his identification and called them once while he had the truck indicates that he did not intend to deprive CarTime of its property, the jury could properly infer Wright's intent from the circumstances surrounding the crime. *Armstrong*, 2020 Ark. 309, 607 S.W.3d 491. Viewing the evidence in the light most favorable to the State, substantial evidence supports Wright's conviction for theft of property.

In his second point, Wright insists that the circuit court erred when it determined that his 1989 conviction for burglary in Kansas qualified for sentencing purposes as a prior

9

felony involving violence because it was comparable to an Arkansas residential burglary. He seeks reversal of this finding as well as the statutorily mandated life sentence for aggravated robbery. The determination of whether a felony conviction from another jurisdiction is comparable to an enumerated felony involving violence under Arkansas criminal law lies within the discretion of the circuit court at the time of sentencing. Ark. Code Ann. § 5-4-501(d)(3)(B).

Wright was convicted of aggravated robbery, which, pursuant to Arkansas Code Annotated section 5-4-501(d)(2)(A)(iv), is a "felony involving violence." Aggravated robbery is a Class Y felony. Ark. Code Ann. § 5-12-103(b). Wright's conviction of aggravated robbery made him eligible for sentencing as a habitual offender if he had previously been convicted of two other felonies involving violence. Ark. Code Ann. § 5-4-501(d)(1). According to Arkansas Code Annotated section 5-4-501(d)(2)(A)(xi), residential burglary as defined by section 5-29-201(a) is a felony involving violence. Additionally, a conviction of "a comparable serious felony involving violence from another jurisdiction[]" may qualify as a prior conviction for sentencing purposes. Ark. Code Ann. § 5-4-501(d)(2)(B).

Wright does not challenge the circuit court's use of his 1992 Kansas burglary conviction. He does, however, argue that the court erred by ruling that his 1989 conviction was comparable to an Arkansas residential-burglary conviction. In 1989, Wright pled guilty to three counts of burglary in violation of Kansas Statutes Annotated section 21-3715. The Kansas statute in effect at the time defined burglary as

knowingly and without authority entering into or remaining within any building, mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein.

Kan. Stat. Ann. § 21-3715 (1988).

At the time of Wright's offense, a person committed residential burglary in Arkansas

if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment.

Ark. Code Ann. § 5-39-201 (Repl. 2013).

A residential occupiable structure

means a vehicle, building, or other structure:

(i) In which any person lives; or

(ii) That is customarily used for overnight accommodation of a person whether or not a person is actually present.

Ark. Code Ann. § 5-39-101 (Supp 2017).

Wright argues that his Kansas conviction is not comparable to an Arkansas residential-burglary conviction because the Kansas statute includes burglaries committed in nonresidential places. He contends that a barn is not included in the Arkansas definition of a residence and that the Kansas law does not define residence. He asserts that any doubts must be resolved in his favor. The evidence in the record, however, clarifies the nature of his crime. Although Wright testified that his 1989 Kansas conviction was based on his theft of a piece of farm equipment from his employer's barn, the State introduced the 1989 Kansas information charging Wright with three counts of burglary. Count one charged that "on or

11

about the 20th day of June, 1989, TRACY D. WRIGHT, did unlawfully, feloniously, willfully, knowingly and without authority, enter into or remain within the residence of Jack Orr . . . with the intent to commit a felony or theft therein." Wright pled guilty to count one, as well as the other two counts, which alleged burglaries of commercial establishments. Other than his own self-serving testimony, Wright offered no evidence to dispute the factual basis for the count charging him with committing a residential burglary in Kansas. In light of the information's factual description of the offense and Wright's guilty plea to the charge, the court did not err in determining that his 1989 offense was comparable to an Arkansas residential burglary. Because aggravated robbery is a Class Y felony, a life sentence was mandatory. Ark. Code Ann. § 5-4-501(d)(1)(A).

*4-3(a) Review*

In compliance with Arkansas Supreme Court Rule 4-3(a), we have examined the record for all objections, motions, and requests made by either party that the circuit court decided adversely to Wright. We find no prejudicial error.

Affirmed.

*Digby Law Firm*, by: *Bobby R. Digby II*, and *Daniel S. Marks*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.