Cite as 2022 Ark. 197

# SUPREME COURT OF ARKANSAS

**No.** CR–22–172

| | | |
|---|---|---|
| | | **Opinion Delivered:** November 10, 2022 |
| THOMAS HARTLEY | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-20-1413] |
| V. | | HONORABLE BRAD KARREN, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED IN PART; REVERSED AND REMANDED IN PART. |

**JOHN DAN KEMP, Chief Justice**

Appellant Thomas Hartley appeals a Benton County Circuit Court order convicting him of two counts of rape, sexual assault in the second degree, and sexually grooming a child. He was sentenced to concurrent terms of life, life, twenty years, and six years, respectively. For reversal, Hartley argues that (1) substantial evidence does not support his convictions for rape and sexually grooming a child; (2) the circuit court abused its discretion by excluding evidence that the victim, a minor child ("MC"), had previously been exposed to pornography; and (3) the circuit court erred by assessing a cybercrime fee in this case. We affirm in part and reverse and remand in part.

## I. *Facts*

MC, who was eleven years old at the time of trial, testified that she knew Hartley because he had been her mother's boyfriend. MC explained that, "[s]ometimes [Hartley] would touch [her] on [her] breasts and sometimes he would touch [her] down in [her]

vagina." She recalled that sometimes he would make her take off her clothes and sometimes they would be on. When he "tried to touch [her] part – [her] private part," they were in her mom's bedroom. MC indicated that her "private part" is her vagina. She testified that "[s]ometimes he would, um, make me sit on the bed and open my legs a lot[,] . . . [a]nd he would sometimes rub his fingers on my private and try to put them inside of me." When asked if Hartley would try to touch her inside her body, MC replied yes. MC further testified that "he would make me spread my legs and he would take two fingers and try to put them in my vagina." She stated that she felt pain, and she "tried to move away when he tried to put it in there farther."

When the deputy prosecutor asked MC if Hartley had ever used anything else, MC responded that "[s]ometimes he tried to use his penis[,]" and "[h]e used a little pink vibrator toy." The following colloquy then occurred:

| | |
|---|---|
| DEPUTY PROSECUTOR: | Okay. And where -- how would he use that toy? |
| MC: | He would make me hold it on my vagina. |
| DEPUTY PROSECUTOR: | Would he touch that toy inside your body, outside your body, or something else? |
| MC: | Just there I can remember. |
| DEPUTY PROSECUTOR: | Did that toy do anything? |
| MC: | It would just start vibrating and it hurt when he put it on me but that's it. |

MC also testified that Hartley would try to put his penis inside her, but "he couldn't go inside of me. I wasn't ready."

MC testified that when Hartley first started touching her, he said not to tell anyone. He did not threaten anybody, but just told her "not to tell anybody." MC also recalled that Hartley would sometimes put "porn movies on the TV" while this was going on. MC testified that the people in those movies were having sex. When asked how many times she saw those kinds of movies, she responded, "Pretty much every time he would try and touch me."

Kacie Parrish, a sexual-assault nurse examiner ("SANE") coordinator, examined MC on July 11, 2019. Parrish testified that, on the medical report she completed for MC, she had circled "pain," and Parrish noted that MC had reported experiencing genital pain "when she was touched," as well as "burning." Parrish had also written "[a]buse suspected" in the exam-summary portion of the report. Additionally, Parrish testified that a penetration of the labia majora, which is the "external part of the fold of the female genitalia," would "count as penetration because that is penetrating into the genital." She agreed that it is possible to penetrate the labia majora without penetrating other parts of the vagina.

On this evidence, the jury convicted Hartley of two counts of rape, sexual assault in the second degree, and sexually grooming a child. He was sentenced to concurrent terms of life for each count of rape, twenty years' imprisonment for second-degree sexual assault, and six years' imprisonment for sexually grooming a child. Hartley filed a timely notice of appeal, and this appeal followed.

II. *Points on Appeal*

A. Sufficiency of the Evidence

Hartley first challenges the sufficiency of the evidence supporting his convictions for two counts of rape and one count of sexually grooming a child.[1] He argues that the State failed to prove the penetration element for each rape count and failed to prove the intent element of sexually grooming a child.

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *McClendon v. State*, 2019 Ark. 88, at 3, 570 S.W.3d 450, 452. In reviewing this challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the conviction. *Id.*, 570 S.W.3d at 452. We will affirm the verdict if substantial evidence supports it. *Id.*, 570 S.W.3d at 452. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*, 570 S.W.3d at 452. It is the function of the jury, and not the reviewing court, to evaluate the credibility of witnesses and to resolve any inconsistencies in the evidence. *Breeden v. State*, 2013 Ark. 145, at 5, 427 S.W.3d 5, 8–9.

1. *Two counts of rape*

Hartley committed rape "if he engage[d] in sexual intercourse or deviate sexual activity with another person . . . [w]ho was less than fourteen (14) years of age." Ark. Code Ann. § 5-14-103(a)(3)(A) (Repl. 2013). "'Sexual intercourse' means penetration, however

---

[1]Hartley does not challenge the sufficiency of the evidence supporting his conviction for sexual assault in the second degree.

4

slight, of the labia majora by a penis[.]" Ark. Code Ann. § 5-14-101(11) (Repl. 2013). "'Deviate sexual activity' means any act of sexual gratification involving . . . [t]he penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(B) (Repl. 2013).

A rape victim's uncorroborated testimony describing penetration may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child. *Breeden*, 2013 Ark. 145, at 4, 427 S.W.3d at 8. The rape victim's testimony need not be corroborated, and scientific evidence is not required. *Id*. at 4–5, 427 S.W.3d at 8. Additionally, this court has stated that penetration can be shown by circumstantial evidence, and if that evidence gives rise to more than a mere suspicion, and the inference that might reasonably have been deduced from it would leave little room for doubt, that is sufficient. *Fernandez v. State*, 2010 Ark. 148, at 4, 362 S.W.3d 905, 907.

Hartley argues that the State failed to prove the penetration element as to each count of rape. The State asserted at trial that one count of rape was based on digital penetration and one count was based on Hartley's penetration of MC's vagina with an object. On the first count of rape, MC testified that Hartley "would make me spread my legs and he would take two fingers and try to put them in my vagina." She felt pain, so she "tried to move away when he tried to put it in there farther." The foregoing testimony by MC constitutes substantial evidence of penetration on the first rape count. It is sufficient, absent any corroboration, to sustain Hartley's rape conviction. *Breeden*, 2013 Ark. 145, at 4–5, 427 S.W.3d at 8. We therefore hold that substantial evidence supports the first rape count.

5

On the second rape count, MC testified that Hartley would use a vibrator toy and "would make [her] hold it on [her] vagina." She explained that the toy "would just start vibrating and it hurt when he put it on [her.]" Further, the SANE coordinator described the labia majora as the outermost portion and "external part of the fold of the female vagina." Her testimony, combined with MC's description of the object's location on her vagina, the fact that it was vibrating, and the pain that resulted gives rise to more than just suspicion and leaves little room for doubt that Hartley penetrated MC's labia majora with the object, even if only slightly. *See, e.g.*, *Fernandez*, 2010 Ark. 148, at 8, 362 S.W.3d at 909. Accordingly, we hold that substantial evidence supports Hartley's conviction on the second count of rape, and we affirm it.

### 2. *Sexually grooming a child*

Hartley also argues that the State presented insufficient evidence of sexually grooming a child because there was no proof that he showed pornography to MC with the purpose to engage in sexual conduct with her. Instead, he claims that "the State's evidence showed that Hartley purportedly showed pornography to MC *after* having already engaged in sexual behavior with her."

Hartley committed sexually grooming a child if he "knowingly disseminate[d] to a child thirteen (13) years of age or younger with or without consideration a visual or print medium depicting sexually explicit conduct with the purpose to entice, induce, or groom the child . . . to engage in the following with a person: (1) Sexual intercourse; (2) Sexually explicit conduct; or (3) Deviate sexual activity." Ark. Code Ann. § 5-27-307(b)(1)–(3) (Repl. 2013). A criminal defendant's intent or state of mind is seldom capable of proof by

6

direct evidence and must usually be inferred from the circumstances of the crime. *Wright v. State*, 2022 Ark. 103, at 9, 644 S.W.3d 236, 241. Because intent cannot be proved by direct evidence, jurors can draw upon their common knowledge and experience to infer it from the circumstances. *Id.*, 644 S.W.3d at 241.

Here, the State presented evidence, through MC's testimony, that Hartley put pornographic movies on the television "[p]retty much every time he would try and touch [her]." MC's testimony was clear that pornographic movies played while the acts were occurring. Given this testimony, we conclude that the jury easily could have inferred from these circumstances that Hartley played the pornographic movies for the purpose of enticing, inducing, or grooming MC to engage in sexual intercourse or deviate sexual behavior. Thus, we hold that substantial evidence supports Hartley's conviction for sexually grooming a child.

## B. Exclusion of Evidence Under the Rape-Shield Statute

Next, Hartley challenges the circuit court's denial of his motion to introduce prior instances in which MC allegedly was exposed to pornography. In excluding the evidence, the circuit court found that the fact that MC had allegedly been shown pornography by her mother and father when she was five years old was "clearly an allegation of sexual abuse" that was inadmissible pursuant to Arkansas's rape-shield statute codified at Arkansas Code Annotated section 16-42-101 (Supp. 2021). Hartley argues that the conduct at issue was not "sexual conduct" as defined by section 16-42-101(a) and, therefore, the circuit court abused its discretion in excluding the evidence pursuant to our rape-shield statute. The State responds that the evidence was properly excluded pursuant to the rape-shield statute, and

that even if the rape-shield statute is inapplicable, it nonetheless was properly excluded because it was not relevant.

Circuit courts have broad discretion in deciding evidentiary issues, and we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion. *Collins v. State*, 2019 Ark. 110, at 5, 571 S.W.3d 469, 471–72. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.*, 571 S.W.3d at 472. Furthermore, we will not reverse unless the appellant demonstrates that he was prejudiced by the evidentiary ruling. *Id.*, 571 S.W.3d at 472.

Arkansas Code Annotated section 16-42-101 states in pertinent part,

> (a) As used in this section, unless the context otherwise requires, "sexual conduct" means deviate sexual activity, sexual contact, or sexual intercourse, as those terms are defined by § 5-14-101.

> (b) In a criminal prosecution under § 5-14-101 et seq., the Human Trafficking Act of 2013, § 5-18-101 et seq., or § 5-26-202, or for criminal attempt to commit, criminal solicitation to commit, or criminal conspiracy to commit an offense defined in any of those sections, opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, evidence of a person's prior sexual conduct when the person was a victim of human trafficking, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.

"Sexual contact" is "[a]n act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female"

or "urinating, defecating, or ejaculating on another person for the purpose of sexual gratification[.]" Ark. Code Ann. § 5-14-101(12) (Supp. 2021).[2]

Here, in its order excluding the evidence, the circuit court found that

> [t]he allegation that [MC] was shown pornography by her mother and father occurred when [MC] was five years old. This was not a consensual choice made by [MC], but is clearly an allegation of sexual abuse. Under A.C.A. § 16-42-101, evidence or testimony of the alleged victim's prior sexual abuse is inadmissible. The Arkansas Supreme Court has held that evidence that a minor child was sexually assaulted by another perpetrator two years prior to the alleged sexual assault at hand was inadmissible. *State v. Townsend*, 366 Ark. 152 (2006). Here, the defendant also wishes to introduce evidence that [MC] was shown pornography by a perpetrator other than the defendant approximately two years before the defendant allegedly abused her. Therefore, testimony that [MC] was sexually abused by her parents by being shown pornography at five years old is inadmissible.

This court has held that a minor victim's previous exposure to pornography does not constitute "sexual conduct" pursuant to the rape-shield statute. *Drymon v. State*, 316 Ark. 799, 807–08, 875 S.W.2d 73, 77 (1994). Therefore, we conclude that the circuit court erred in excluding this evidence pursuant to section 16-42-101.

We nevertheless see no abuse of discretion in the circuit court's exclusion of the evidence because it was irrelevant to the crimes with which Hartley had been charged.[3] Relevant evidence is evidence having any tendency to make the existence of any fact that

---

[2]The terms "deviate sexual activity" and "sexual intercourse" were previously defined in this opinion.

[3]The State asserted at the suppression hearing that the evidence at issue was irrelevant, and the circuit court ruled from the bench that "[w]hether . . . [MC] viewed pornography with [her mother and father] is not relevant to whether Thomas Hartley engaged in viewing pornography with [MC]." In any event, this court will affirm the circuit court's decision when it reached the right result, even if it did so for the wrong reason. *Barnett v. State*, 2020 Ark. 181, at 3, 598 S.W.3d 835, 837.

is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401. Irrelevant evidence is inadmissible. Ark. R. Evid. 402.

MC's alleged exposure to pornography by her parents when she was five years old is irrelevant to the crimes for which Hartley was charged—rape, sexually grooming a child, and sexual assault. Hartley asserts on appeal that the evidence "was relevant to show that MC had actually been shown pornography by her parents rather than Hartley." We disagree. The fact that MC may have previously been exposed to pornography is irrelevant to the fact, presented through MC's undisputed testimony, that Hartley would put pornographic movies on the television almost every time he tried to touch her. *See, e.g.*, *M.M. v. State*, 350 Ark. 328, 333–34, 88 S.W.3d 406, 409–10 (2002). Thus, we hold that the circuit court did not abuse its discretion in refusing to admit the evidence that MC allegedly had been exposed to pornography by her parents when she was five years old, and we affirm on this point.

C. Cybercrime Fee

Last, Hartley argues that the circuit court erred by assessing a $150 cybercrime fee because the State failed to meet the requirements of Arkansas Code Annotated section 5-4-706(b) (Supp. 2021), which states,

> In addition to any other fee authorized or required by law, a circuit court shall assess an additional fee of up to five hundred dollars ($500) for each applicable felony conviction for an offense that the trier of fact finds:

> (1) Involved the use of a computer, an electronic device, or the internet; and

(2) The investigation of which expended specialized law enforcement personnel or materials designed to investigate offenses involving a computer, an electronic device, or the internet.

The State concedes that it "failed to demonstrate that 'specialized law enforcement personnel or materials designed to investigate offenses involving a computer, an electronic device, or the internet were utilized' in the investigation of Hartley" (citing Ark. Code Ann. § 5-4-706(b)(2)). Given the State's concession that it failed to meet the requirements of section 5-4-706(b)(2), we hold that the assessment of a cybercrime fee was erroneous. We therefore reverse and remand for entry of a corrected sentencing order in which Hartley is not assessed a cybercrime fee.

III. *Rule 4-3(a)*

Because Hartley received two life sentences, this court, in compliance with Arkansas Supreme Court Rule 4-3(a), has examined the record for all objections, motions, and requests made by either party that were decided adversely to Hartley. No prejudicial error has been found.

Affirmed in part; reversed and remanded in part.

WOMACK, J., concurs.

**SHAWN A. WOMACK, Justice, concurring.** I join the majority's decision to affirm Hartley's convictions. I also agree with the majority's conclusion that the circuit court erroneously assessed a cybercrime fee. However, when this court confronts errors in sentencing orders, we may affirm as modified instead of remanding. *See Walden v. State*, 2014 Ark. 193, at 11, 433 S.W.3d 864, 871. Because "[r]emanding is a needless waste of resources

11

for both parties, the trial court, the clerks and other employees," I would affirm Hartley's sentence as modified. *Smith v. State*, 2022 Ark. 95, at 22 (Womack, J., concurring).

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.