Cite as 2023 Ark. App. 369

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-22-224

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** September 6, 2023 |
| DONALD THATCHER | | |
| | **APPELLANT** | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-20-1360] |
| V. | | |
| | | HONORABLE BRADLEY LEWIS KARREN, JUDGE |
| STATE OF ARKANSAS | | |
| | **APPELLEE** | |
| | | AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Donald Thatcher appeals the Benton County Circuit Court's September 13, 2021 sentencing order convicting him of rape and second-degree sexual assault. He was sentenced to consecutive terms of forty years' imprisonment for the rape conviction and twenty years' imprisonment for the sexual-assault conviction. Thatcher's sole argument on appeal is that the evidence is insufficient to support his convictions. We affirm.

In June 2020, seven-year-old Minor Child (MC) began staying with her grandparents, the Thatchers, from Sunday night through the end of the workday on Wednesday to avoid COVID exposure at daycare. By the third week in June, MC's parents, Kristina and Brian Late, noticed that MC had become fearful, did not want to leave their sides, insisted on sleeping in their room, and had begun to experience pain or difficulty urinating, as well as bed-wetting.

On the evening of June 24, after staying at the Thatchers' that day, MC pointed to her vaginal area and asked Kristina what it was called, which was the first time MC had asked a question like that. Early the next morning, Thatcher entered the Lates' home unannounced. Brian testified that after making several random requests of Brian—to upholster some boat seats, pick up some cars stored on Thatcher's property, and give Thatcher a piece of sixteen-gauge metal—Thatcher said that the real reason he was there was to make sure MC was okay. Thatcher said that he had scared her the day before when they were at the boat dock and she had a tick on her. He said that MC had "started freaking out," and he had to do "the Little Princess dance" to calm her down.

Brian told Thatcher that MC was asleep, and without saying a word Thatcher walked into the bedroom where MC was sleeping. He emerged a minute later and walked out the front door without saying anything. As he left, MC came out of the bedroom crying. Thatcher called while Brian was consoling her. He told Brian not to say anything to Kristina or MC because he did not want to upset them about the tick, that everything was fine, and MC was just afraid it was going to make her sick. After Brian hung up, he asked MC if Thatcher had checked her for a tick. He said she was "bawling" and nodded her head "yes" and, when he asked where Thatcher had checked her for the tick, MC moved her arms over her "legs and privates."

When Kristina arrived home from work, she and Brian talked with MC. She revealed that Thatcher had touched her vaginal area more than once, and when she would roll away from him, he would temporarily stop but then would start touching her again. She testified similarly at trial, stating that Thatcher touched her on the outside of her "privates" more than once while she was at the Thatcher home. When Brian and Kristina confronted Thatcher with the

2

allegations of molestation that evening, he stated, "I never tell [MC] not to discuss what we do. She rubs herself on me, she grinds on me, and we cuddle."

That night, at the Benton County Children's Advocacy Center, MC disclosed the abuse to a forensic interviewer, and Emily Black, a registered nurse with specialized training in sexual-assault assessments, examined MC. She examined MC's genitals externally and internally up to the hymen and found no injuries or other abnormalities. She explained that the absence of physical findings was consistent with the type of abuse MC had disclosed. She obtained specimens from MC's outer-external genitalia (the mons pubis, groin, and labia majora), the inner-external genitalia (the labia minora, posterior fourchette, and clitoral hood), and the anal area.

Testing at the Arkansas State Crime Laboratory revealed the presence of foreign male DNA in the specimens taken from within the labia majora and the outer part of MC's anus. Forensic DNA analyst Maddison Harrel testified that the most likely way the DNA was deposited was by direct contact. He said the quantity of male DNA in relation to the amount of female DNA, however, was insufficient to develop a full profile that could be compared with Thatcher's known DNA sample. Further, the method of testing used, Y-STR testing, could not differentiate the type of cells that had been the source of the DNA, such as semen or skin. For these reasons, Harrel was unable to draw any conclusion about whether Thatcher had been the source of the DNA.

Police arrested Thatcher, and in a custodial statement to Detective Michael Braswell, Thatcher said that MC had been coming onto him, wanted him to touch her vagina, and would point to her "private parts" and ask him to tickle her there. A subsequent forensic examination

of his computer revealed a search history in June 2020 that included phrases such as "does masturbation cause precocious puberty" and "precocious erotic stories" and access to pornographic sites, including a video in June 2020 titled "father and teen."

On this evidence, the jury convicted Thatcher of rape and second-degree sexual assault. On appeal, he challenges the sufficiency of the evidence to support both convictions.

When reviewing a challenge to the sufficiency of the evidence, this court must view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Bahena v. State*, 2023 Ark. App. 261, at 2, 667 S.W.3d 553, 555. A conviction will be affirmed if substantial evidence supports it. *Price v. State*, 2019 Ark. 323, at 4, 588 S.W.3d 1, 4. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.*, 588 S.W.3d at 4. Witness credibility, the weight of the evidence, and the resolution of any conflicts or inconsistencies in testimony or evidence are matters for the fact-finder. *Woods v. State*, 2013 Ark. App. 739, at 5–6, 431 S.W.3d 343, 347.

For his first argument, Thatcher asserts that there is insufficient evidence of penetration to support his rape conviction. A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2017). Sexual intercourse is defined as penetration, however slight, of the labia majora by a penis. Ark. Code Ann. § 5-14-101(12) (Supp. 2017). Deviate sexual activity is "any act of sexual gratification involving . . . the penetration, however slight, of the anus or mouth of a person by the penis of another person; or . . . [t]he penetration, however

4

slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(A), (B) (Supp. 2017).

Thatcher argues that to prove the offense of rape, the State was required to present substantial evidence of penetration of MC's mouth, anus, or labia majora with his penis. He argues that the State's proof fell short because MC's physical examination showed no injury; the State presented no physical evidence of penetration; the male DNA detected inside MC's labia majora "did not match Thatcher[,]" and MC never testified that Thatcher "insert[ed] anything into her mouth, anus, or labia majora."

The State correctly notes that to convict Thatcher of rape, it did not have to prove that he penetrated MC's mouth, anus, or labia majora with his penis. Deviate sexual activity includes several means of penetration, among them the penetration of a person's labia majora by any body member of another person. Ark. Code Ann. § 5-14-101(1)(B). The State argues that there is substantial evidence that Thatcher engaged in deviate sexual activity by penetrating MC's labia majora with his hand and that by limiting his argument on appeal to penile penetration, he has abandoned any argument to the contrary. We disagree that Thatcher has abandoned this issue.

In addition to his specific mention of penile penetration, Thatcher broadly argues that MC "never testified that [he] did penetrate her or insert anything into her . . . labia majora" and that "there is no evidence that [he] penetrated [her] . . . vagina." He asserts that the "[S]tate did not introduce any physical evidence to prove that [he] penetrated [MC]." We read these arguments to challenge the proof of penetration by means other than Thatcher's penis, including his hand; therefore, we reach the merits. *Marshall v. State*, 94 Ark. App. 34, 38–39, 223 S.W.3d 74, 78–79 (2006).

5

Furthermore, we hold that substantial evidence supports the jury's findings that Thatcher raped MC by penetrating her labia majora with his hand. Penetration can be shown by circumstantial evidence, and if that evidence gives rise to more than a mere suspicion, and the inference that might reasonably have been deduced from it would leave little room for doubt, that is sufficient. *Hartley v. State*, 2022 Ark. 197, at 5, 654 S.W.3d 802, 806. MC testified that Thatcher touched her vagina with his hand more than once while she was staying at his home. She told her parents that he would continue to touch her even after she had rolled away from him. When confronted with these allegations, Thatcher contended that MC had initiated the contact, saying, "I never tell [MC] not to discuss what we do. She rubs herself on me, she grinds on me, and we cuddle." Thatcher also told police that MC "would point to her private parts and ask if he would tickle her there." The foregoing evidence, combined with the testimony demonstrating that male DNA was found inside MC's labia majora and that the most likely way it was deposited was by direct contact, gives rise to more than a mere suspicion of Thatcher's penetration of MC's labia majora with his hand.

Contrary to Thatcher's argument, the lack of physical findings on MC's exam is not conclusive evidence that no rape occurred. *Woods*, 2013 Ark. App. 739, at 6, 431 S.W.3d at 347. Nurse Black explained that the absence of physical injury was consistent with the type of abuse MC disclosed because it is possible to be touched without leaving any injury, marking, or other abnormality.

Further, it was not necessary for MC to specifically say that Thatcher penetrated her labia majora for the jury to find that he had done so. In *Hartley*, it was sufficient that the victim testified that Hartley made her hold a vibrator toy on her vagina and that it "would just start

vibrating and it hurt when he put it on [her.]" 2022 Ark. 197, at 6, 654 S.W.3d at 806. The supreme court said that this testimony describing the object's location on the vagina, the fact that it was vibrating, and the resulting pain, combined with the nurse examiner's description of the labia majora as "the outermost portion and 'external part of the fold of the female vagina'" gave rise to more than just suspicion and left little room for doubt that Hartley had penetrated the child's labia majora with the object, even if only slightly. *Id.*, 654 S.W.3d at 806. As in *Hartley*, the circumstantial evidence in the case at bar gives rise to more than just suspicion and leaves little room for doubt that Thatcher penetrated MC's labia majora with his hand.

Finally, although the DNA analyst could not develop a profile to determine the probabilities of a match to Thatcher, the presence of male DNA found in the specimen taken from inside MC's labia majora was relevant circumstantial evidence of penetration. *See* Ark. R. Evid. 401. The fact that the DNA was insufficient in quantity to allow a comparison to Thatcher's DNA profile concerns the weight of the evidence, which was a matter for the jury's determination. *Woods*, 2013 Ark. App. 739, at 6, 431 S.W.3d at 347. We affirm Thatcher's rape conviction.

For his second argument, Thatcher challenges the sufficiency of the evidence of sexual gratification, a required element of his convictions of both rape and sexual assault in the second degree. As an element of rape, deviate sexual activity is defined as "any act of sexual gratification involving . . . the penetration, however slight, of the anus or mouth of a person by the penis of another person; or . . . [t]he penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(A), (B). A person commits sexual assault in the second degree if, being eighteen years

of age or older, the person engages in sexual contact with another person who is less than fourteen years of age and not the person's spouse. Ark. Code Ann. § 5-14-125(a)(3) (Supp. 2019). Sexual contact is defined in pertinent part as "an act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person." Ark. Code Ann. § 5-14-101(11) (Supp. 2017).

Thatcher contends that proof of sexual gratification should require more than MC's testimony that the prohibited act occurred and argues that it should require evidence that he was gratified by the act or his admission that he was sexually satisfied by it. Thatcher also acknowledges that, in addition to MC's testimony, the State presented evidence that his explicit computer searches demonstrated sexual gratification. He nevertheless contends that the evidence is insufficient because he was not the sole user of the computer, and the searches do not prove that he was sexually gratified by his physical contact with MC's vagina.

In *McGalliard v. State*, 306 Ark. 181, 182, 813 S.W.3d 768, 768 (1991), our supreme court held that the victim's testimony that McGalliard had touched her "between [her] legs . . . (indicating) right there in the middle . . . my private parts[ ]" for "about an hour" was sufficient evidence to infer an act of sexual gratification as required by the statute. Similarly, in *Holbert v. State*, 308 Ark. 672, 675, 826 S.W.2d 284, 285–86 (1992), our supreme court held that evidence that Holbert had touched the victims' "privates," between their legs, in a manner that was not accidental was sufficient evidence for a fact-finder to reasonably infer these were acts of sexual gratification.

MC's testimony that Thatcher touched her "privates" with his hand multiple times provides substantial evidence of sexual gratification sufficient to support Thatcher's rape and

8

second-degree sexual-assault convictions. Combined with the testimony of the sexual-assault nurse examiner and the forensic DNA analyst, MC's testimony provides substantial evidence that Thatcher penetrated her labia majora while touching her. Further, the jury could have concluded that contact of a sexual nature had occurred based on Thatcher's statements that MC "rubs herself on me, she grinds on me, and we cuddle" and that she was coming onto him, wanted him to touch her vagina, and would point to her "private parts" and ask him to tickle her there. An admission from Thatcher that he was sexually gratified is not required. If it can be inferred that sexual gratification is a plausible reason for the act, that is sufficient. *DeJohn v. State*, 2021 Ark. App. 495, at 3, 638 S.W.3d 32, 34.

Finally, it was for the jury to consider the weight of the testimony concerning access to Thatcher's computer and the extent to which that evidence proved he committed acts of sexual gratification. *Woods*, 2013 Ark. App. 739, at 5–6, 431 S.W.3d at 347. This court cannot reweigh the evidence. *Lee v. State*, 2019 Ark. App. 184, at 4–5, 574 S.W.3d 211, 214.

Affirmed.

VIRDEN and KLAPPENBACH, JJ., agree.

*K. Presley Turner*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.