Cite as 2025 Ark. App. 119

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CR-24-507

| | |
|---|---|
| JONATHAN FLORES MARTINEZ<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered February 26, 2025<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT<br>[NO. 23CR-22-426]<br><br>HONORABLE TROY B. BRASWELL, JR., JUDGE<br><br>AFFIRMED |

**CASEY R. TUCKER, Judge**

At the conclusion of a three-day trial, a Faulkner County jury convicted appellant Jonathan Martinez of one count of rape, two counts of residential burglary, two counts of attempted residential burglary, one count of breaking or entering, one count of misdemeanor theft and one count of misdemeanor criminal mischief. The circuit court sentenced Martinez to an aggregate of 106 years' imprisonment. Appellant's rape conviction accounted for forty years of his aggregate sentence. Appellant appeals only his conviction of rape, asserting that it was not supported by sufficient evidence. We disagree and affirm.

This court's standard of review on challenges to the sufficiency of the evidence is well established:

> In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Price v. State*, 2010 Ark. App. 111, 377 S.W.3d 324.

> We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* The duty of resolving conflicting testimony and determining the credibility of witnesses is left to the discretion of the jury. *Kelley v. State*, 375 Ark. 483, 292 S.W.3d 297 (2009).

*Lester v. State*, 2024 Ark. App. 206, at 9, 687 S.W.3d 344, 353. With the applicable standard of review in mind, we consider the following evidence adduced at trial.

Beginning at approximately 2:30 a.m. on May 4, 2022, Martinez broke into or attempted to break into a series of houses in Conway, Arkansas. These houses were near each other. Other than that, they all had one thing in common: they had children's toys and play equipment in the backyard or visible from the backyard.

First, Martinez broke into the house of the Lamey family. Mrs. Lamey discovered him standing behind her while she was checking the security panel in her laundry room after the alarm sounded. Mrs. Lamey shoved past him and ran to her husband. Their daughter called 911, and Martinez disappeared. The Lameys had a swimming pool with children's pool toys in it and various balls and toys in their backyard.

A few minutes later, Mr. and Mrs. Mauldin discovered Martinez on their back porch attempting to open the door to their bedroom. Mr. Mauldin began yelling at him, and ultimately, he disappeared off the porch. The Mauldins had toys suitable for their young grandsons in their backyard.

Shortly thereafter, the Lewises awoke to the sound of their burglar alarm and a phone call from their security company alerting them that their system indicated a window had

been broken.  Mr. and Mrs. Lewis, who had three small children, lived at the back of a cul-de-sac.  Their backyard was full of toys and play equipment for young children, especially for girls.  The back of the house, which included the playroom, had floor-to-ceiling windows. The playroom was full of toys and activities for little girls.  No one else on the cul-de-sac had children.  The Lewises discovered that a large window had been broken, and the glass had shattered into their house.

Officer Clint Evans of the Conway Police Department was dispatched to first one, and then another, of the houses that Martinez had visited. He obtained photos of Martinez from one home's security cameras and sent them to dispatch.  A few hours later, Officer Evans and another officer apprehended Martinez when they found him walking down a nearby street.  Their search of Martinez turned up a dollar or two, a very small babydoll blanket, some pieces of toilet paper, and a thank-you note written to a "Mrs. Becca" thanking her for being such a good teacher for the writer's child.

Sergeant Brittani Little, a detective with the Conway Police Department who worked on sexual-assault cases involving children, was on patrol at the time of the events.  She was concerned about the aggressiveness of the break-ins.  When she saw the items taken from Martinez's pockets, she became very concerned about his motive for the break-ins, fearing the items, especially the babydoll blanket, might be "trophies" or mementos of a sexual assault. Using the thank-you note and conducting online searches followed by telephone interviews, Sergeant Little was able to quickly piece together that the note and blanket probably came from yet another house in the area—the Pences.

The Pences are a family of four.  On May 4, 2022, their son was four, and their daughter was two.  Their backyard was full of children's toys.  When Sergeant Little contacted the Pences the morning of May 4, they did not yet know they were the victims of a break-in.  During Officer Little's conversation with Mr. Pence, especially when she described the babydoll blanket that belonged to their daughter, Mr. and Mrs. Pence grew alarmed, and they raced upstairs to check on their children.  Their sleeping son and his room appeared undisturbed.  Their two-year-old daughter was sleeping in her crib.  However, her nursery monitor had been removed from its mount above the bed.  Although she was wearing her pajamas, she was not wearing her diaper, and her bed was wet with urine. Despite the fact the child was too young to remove the diaper on her own, the used diaper was lying in the middle of the floor. There was wadded tissue on the shelved stand that stood next to the changing table.  Sergeant Little advised the Pences to secure the bedroom and take their daughter, unbathed, to Arkansas Children's Hospital (ACH) to be examined by the Children at Risk of Trauma (CART) team.  The Pences followed her advice.

A detective obtained oral swabs from the two-year-old victim's father and Martinez's purported girlfriend. Another detective swabbed Martinez's hands and fingers and the inside of his cheeks.  He also obtained swabs from his penis and groin.

Detective Chuck Myers questioned Martinez, who admitted he had entered the Lameys' house and breaking the window at the Lewises' house.  Martinez admitted entering the Pences' house and looking into the bedroom of the child victim but denied that he had entered it.

At the hospital, a sexual assault nurse examiner (SANE) examined the child and obtained oral, vaginal, and rectal swabs for testing. Following her examination, she reported her physical findings: "There was no visible acute injuries to the anal or genital area. This does not rule out or exclude the possibility of sexual abuse of the patient related to the home-invasion event earlier this morning." According to the nurse, she did not often see actual physical signs of sexual abuse. In her examination, she had found one small tear, or fissure, at the base of the labia majora, but that could be a normal occurrence due to the patient's age and everyday activity, the examination, or sexual abuse. The child's hymen was intact. She further testified this was not an indicator of lack of abuse, however, in that it is not common to find injury to the hymen in cases of sexual abuse of a two-year-old.

The DNA tests revealed that the vaginal swab of the victim contained male DNA as did the rectal swab. The tissue in the victim's bedroom was positive for DNA from the victim and from Martinez, and it excluded the victim's father and Martinez's girlfriend. The swabs taken from Martinez's right and left fingers were positive for the victim's DNA as well as his own. The swab of his penis was positive for his DNA and contained another DNA profile, but there was not enough to compare to the others. The swab of the outer area of the diaper found on the bedroom floor was positive for the victim's DNA and contained a mixture of two other profiles, but there was not enough to test further. The swab from the inner crotch area of the diaper was positive for Martinez's DNA as well as that of the victim.

Dr. Karen Farst, a pediatrician at ACH who is on the CART team and evaluates children when there is concern about neglect or abuse, testified. According to Dr. Farst, in

the majority of cases of even known sexual contact, there is no visible evidence of acute injury or tearing due to the nature of the mucosal skin in the genital area. That skin is stretchy and elastic, and due to its color, it is difficult to see superficial injuries. She explained that "[i]t's not the norm for us to see that there's been some type of injury or tearing, even when sexual contact has occurred." Furthermore, penetration that hurts or is uncomfortable is possible without reaching the hymen. In Dr. Farst's medical opinion, one would not see any type of injury in most cases of penetration of a two-year-old.

When the State rested, Martinez moved for a directed verdict, arguing that there was insufficient proof of rape. Specifically, he argued there was no evidence of sexual intercourse because there was no evidence of penetration of the labia majora by a penis. He further argued that there was insufficient proof of deviate sexual activity since there was a lack of evidence of penetration. Martinez rested without putting on any evidence. He then renewed his motion for directed verdict. The jury convicted Martinez on all charges, and this appeal followed.

Martinez's sole point on appeal is that his conviction for rape was not supported by sufficient evidence that he engaged in sexual intercourse or deviate sexual activity with the victim. We disagree.

Martinez was charged with committing rape by engaging in sexual intercourse or deviate sexual activity with another person who is under the age of fourteen. *See* Ark. Code Ann. § 5-14-103 (a)(3)(A) (Repl. 2024). Sexual intercourse is defined as "penetration, however slight, of the labia majora by a penis." Ark. Code Ann. § 5-14-101(13) (Supp. 2024).

Deviate sexual activity is defined as any act of sexual gratification involving the penetration, however slight, of the anus or mouth of a person by the penis of another person; or the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person. Ark. Code Ann. § 5-14-101(1).

Martinez first argues on appeal that there is insufficient evidence of penetration to support a finding of sexual intercourse or deviate sexual activity. However, penetration can be shown by circumstantial evidence. *Hartley v. State*, 2022 Ark. 197, 654 S.W.3d 802. The court in *Hartley* explained that if the evidence "gives rise to more than a mere suspicion, and the inference that might reasonably have been deduced from it would leave little room for doubt, that is sufficient." *Id.* at 5, 654 S.W.3d at 806.

Circumstantial evidence more than supports the finding of penetration in this case. Not only was Martinez's DNA on the inside crotch area of the victim's diaper, but it and the victim's DNA were also on the tissue by her changing table. Furthermore, the victim's DNA was on Martinez's fingers. Finally, the vaginal and rectal DNA swabs taken from the victim had male DNA on them. Dr. Farst testified that this male DNA would not be in the child's vagina and rectum absent penetration.

Martinez argues on appeal that this is not evidence of penetration by him "because the crime lab had Martinez's DNA. If it was Martinez's DNA on those swabs the crime lab would have been able to make that match." Contrary to Martinez's argument, the evidence at trial was that there was not a sufficient quantity on the swab to compare to Martinez's profile. Thus, this argument does not hold water. Likewise, Martinez's assertion that the

7

lack of physical injury supports a finding of lack of penetration is unpersuasive because both the SANE nurse and Dr. Farst testified that they rarely see physical injuries in cases of sexual abuse of a child as young as the victim here.

Martinez's second argument on appeal is that there was insufficient evidence to support a finding of sexual gratification as required to prove deviate sexual activity. *See* Ark. Code Ann. § 5-14-101(1). He did not make this argument at trial, instead arguing lack of proof of penetration as required to prove deviate sexual activity. We agree with the State that, since Martinez did not make this particular argument before the circuit court, it is not preserved for appellate review. "It is well settled that a party is bound by the nature and scope of . . . arguments made at trial and may not enlarge or change those grounds on appeal." *Stewart v. State*, 2012 Ark. 349 at 8, 423 S.W.3d 69, 74.

Even if we were to consider the merits of Martinez's argument that there was insufficient evidence of sexual gratification, it would fail. This court has stated:

> "Sexual gratification" is not defined in the statute, but the Arkansas Supreme Court has construed the words in accordance with their reasonable and commonly accepted meanings. *Brehm v. State*, 2020 Ark. App. 442, at 5, 608 S.W.3d 166, 168. Appellate courts have made clear that it is not necessary for the State to provide direct proof that an act is done for sexual gratification if it can be assumed that the desire for sexual gratification is a plausible reason for the act. *Id.* Indeed, "case law makes clear that when sexual contact occurs, and there is no legitimate medical reason for it, it can be assumed that such contact was for sexual gratification." *Ross v. State*, 2010 Ark. App. 129, at 4.

*DeJohn v. State*, 2021 Ark. App. 495, at 3–4, 638 S.W.3d 32, 34. *See also Thatcher v. State*, 2023 Ark. App. 369, at 9, 675 S.W.3d 439, 445 ("If it can be inferred that sexual gratification is a plausible reason for the act, that is sufficient."). As we stated in *Green v.*

8

*State*, 2022 Ark. App. 436, at 9, "'The plain fact is that when persons, other than physicians or other persons for legitimate medical reasons, insert something in another person's vagina or anus, it is not necessary that the [S]tate provide direct proof that the act was done for sexual gratification.' *Williams v. State*, 298 Ark. 317, 320–21, 766 S.W.2d 931, 934 (1989)."

In the early morning hours of May 4, 2022, Martinez set out determined to break into a house where young children lived. When he succeeded, he molested a two-year-old child, penetrating her vagina and rectum. These facts support no other conclusion than he committed this act for the purpose of sexual gratification.

Having assessed the evidence in the light most favorable to the State and considering only the evidence that supports the verdict, we find that substantial evidence supports Martinez's conviction of rape. Thus, we affirm.

Affirmed.

HARRISON and THYER, JJ., agree.

*K. Presley Turner*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.