Cite as 2021 Ark. App. 495

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-20-729

|  |  |  |
|---|---|---|
| FRANKIE DEJOHN | APPELLANT | **Opinion Delivered** December 8, 2021<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CR-19-1541] |
| V. |  |  |
| STATE OF ARKANSAS |  | HONORABLE MARK LINDSAY, JUDGE |
|  | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Frankie DeJohn was convicted by a Washington County jury of two counts of second-degree sexual assault and one count of contributing to the delinquency of a minor. He now appeals his conviction as to the count of second-degree sexual assault which involved his daughter, M.D.2. DeJohn challenges the sufficiency of the evidence presented against him, arguing that the State failed to prove that his actions were for the purpose of sexual gratification. We affirm.

In 2018, DeJohn and his three children—Memphis, M.D.1, and M.D.2—moved to Elkins, Arkansas, where they lived with DeJohn's sister and her children, including then seventeen-year-old K.P., for approximately four to five months. At the end of 2018, DeJohn and his children moved into a nearby home.

In early March 2019, M.D.1, Memphis, and K.P. invited some of their friends over to DeJohn's house to have a party. According to the evidence presented at trial, there were six

or seven people at the party, and they smoked marijuana, drank alcohol, and danced. DeJohn was the only person over twenty-one years old at the party, and he provided alcohol to the minors. DeJohn also made sexual comments to the teenagers. For example, he told K.P. that he had flirted and cuddled with I.D., a girl at K.P.'s school, but said that he was going to wait until I.D. was eighteen years old to have sex with her.

At some point during the party, DeJohn was in the kitchen making drinks with twelve-year-old M.D.2, and after everyone else had left the kitchen, DeJohn reached toward M.D.2, squeezed her breast, laughed, and then left the kitchen. M.D.2 stated that she did not believe this was an accident.

K.P. said that, at another point during the party, DeJohn approached her from behind while she was dancing and groped her breasts and buttocks. K.P. also said she saw DeJohn wrestle with M.D.1 and bite her on the thigh, and she witnessed him walk up behind M.D.1 and "smack-grab" her buttocks. DeJohn's actions caused conflict between him and others at the party, including M.D.1's boyfriend, who was angered by the way he touched the girls.

The evidence also demonstrated that the party was not the first time DeJohn had behaved in an inappropriately sexual manner toward the minors. When DeJohn was still living at his sister's house, he had given K.P. massages during which he would start at her shoulders and then slowly move his hands down her back until he was touching her buttocks, at which point she told him to stop. He also sent messages to K.P. at night that said he wanted her to cuddle with him, and on a separate occasion, he asked her if "[she] had any friends [who] would have sex with him for money." DeJohn told K.P. that he preferred younger women because "older women can't keep up with him in bed." DeJohn also started messaging a girl

named B.S., who was M.D.2's fifteen-year-old friend, and told her that he "could do amazing things with his tongue" and "wanted to touch [her] thighs or [her] butt." DeJohn then told B.S. to delete the messages when he discovered she was saving them on her phone. On another occasion, DeJohn made sexual comments and jokes to M.B., M.D.1's fourteen-year-old friend. As with B.S., DeJohn told M.B. that he could do amazing things with his tongue. He also sent her messages saying that "he wanted to flirt with [her]," "he needed to get [her] drunk," and "he wouldn't have to be drunk to kiss [her]."

DeJohn was charged and tried on two counts of second-degree sexual assault against M.D.2 and K.P. for fondling them at the party and one count of contributing to the delinquency of a minor. Following a trial, the jury convicted DeJohn on all three counts, and he was sentenced to five years' imprisonment for each count of second-degree sexual assault, imposed to run consecutively, and one year of confinement in the county jail for contributing to the delinquency of a minor, imposed to run concurrently. This appeal follows.

A person commits second-degree sexual assault in violation of Arkansas Code Annotated section 5-14-125(a)(3) (Supp. 2021) if the actor is eighteen years of age or older and engages in sexual contact with another person who is less than fourteen years of age and not the actor's spouse. Arkansas Code Annotated section 5-14-101(11) (Supp. 2021) defines "sexual contact" as "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female[.]" "Sexual gratification" is not defined in the statute, but the Arkansas Supreme Court has construed the words in accordance with their reasonable and commonly accepted meanings. *Brehm v. State*, 2020 Ark. App. 442, at 5, 608 S.W.3d 166, 168. Appellate courts have made clear that it is not

necessary for the State to provide direct proof that an act is done for sexual gratification if it can be assumed that the desire for sexual gratification is a plausible reason for the act. *Id.* Indeed, "case law makes clear that when sexual contact occurs, and there is no legitimate medical reason for it, it can be assumed that such contact was for sexual gratification." *Ross v. State*, 2010 Ark. App. 129, at 4.

DeJohn argues that these cases, which allow the State to meet its burden of proof as to the sexual-gratification element of the offense by inferring that the act was done for sexual gratification if not done for a legitimate medical reason, are in violation of the statute. DeJohn relies solely on *Johnson v. State*, 7 Ark. App. 172, 175, 646 S.W.2d 22, 23 (1983), for the rule that "[t]he prosecution must prove every element of the offense beyond a reasonable doubt and cannot shift to the defendant the burden of explaining his illegal entry by merely establishing it." His reliance on *Johnson* is misplaced. Johnson challenged the sufficiency of the evidence as to the intent element of the crime of breaking and entering, and we affirmed, holding that "[f]rom these facts and circumstances a jury could easily infer that the appellant's unlawful entry was accompanied by the intent to commit a theft." *Johnson*, 7 Ark. App. 172, at 175, 646 S.W.2d at 23.

Likewise here, even if we accepted DeJohn's argument and did not rely on *Ross* and other cases recognizing the presumption that sexual contact is done for the purpose of sexual gratification unless it is done for legitimate medical purposes, there was ample evidence presented at trial to demonstrate that DeJohn's actions were motivated by a desire for sexual gratification. DeJohn acknowledges that intent can be inferred if the State has presented enough circumstantial evidence to move a reasonable jury beyond speculation and conjecture.

4

*Howard v. State*, 2011 Ark. App. 573, at 3, 386 S.W.3d 106, 109. There was significant evidence that DeJohn had acted in an inappropriately sexual manner toward the victims and their minor friends prior to groping them at the party. His own messages and statements to the girls indicate sexual interest in them. In fact, DeJohn's sexual advances toward the minors caused conflict between DeJohn and M.D.1's boyfriend. Given the fact that DeJohn not only touched the girls inappropriately on their breasts and buttocks but was also supplying the minors with alcohol and had repeatedly talked to them about sex, a reasonable jury could conclude that his actions were motivated by a desire for sexual gratification.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Kezhaya Law PLC*, by: *Sonia A. Kezhaya* and *Matthew A. Kezhaya*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.