Cite as 2026 Ark. App. 128

# ARKANSAS COURT OF APPEALS
## DIVISIONS I & IV
### No. CR-24-808

| | |
|---|---|
| MICHAEL SAWYER HICKS<br><br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered February 25, 2026<br><br>APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CR-23-211]<br><br><br>HONORABLE ROBERT B. GIBSON III, JUDGE<br><br>REVERSED AND REMANDED |

**CINDY GRACE THYER, Judge**

Michael Sawyer Hicks was convicted by an Ashley County Circuit Court jury of the second-degree sexual assault of an underage girl, MV. He now appeals that conviction, arguing that (1) there was insufficient evidence to support his conviction; (2) the circuit court erred in admitting hearsay evidence under the pedophile exception; and (3) a mistrial should have been granted. More specifically, he argues that the State failed to present evidence that the "touching" was for the purpose of sexual gratification; that the circuit court erred in admitting sentencing orders from two prior no-contest pleas to second-degree sexual assault and in allowing the police investigator to testify regarding the factual underpinnings of those pleas; and that the circuit court should have granted a mistrial for allegedly commenting on his right to remain silent. Because we conclude the investigator's testimony was inadmissible, we reverse and remand.

On October 10, 2023, the appellant Michael Hicks pled no contest to two counts of second-degree sexual assault involving Minor Child 1 (MC1) and Minor Child 2 (MC2) and received ten years' probation on each, to run concurrently. Investigator Staci Tumey with the Arkansas State Police Crimes Against Children Division was the investigator on both cases.

While those cases were pending, Investigator Tumey began investigating a third allegation of sexual assault by Hicks involving the alleged victim here, MV. An information charging Hicks with second-degree sexual assault arising from this investigation was filed on December 23, 2023. This appeal stems from the second of two trials based on this third allegation.

On March 26, 2024, the State filed a motion seeking to admit Hicks's prior no-contest pleas under Arkansas Rule of Evidence 404(b). Hicks objected, arguing that the State was attempting to introduce inadmissible character evidence; that the prejudicial nature of that evidence outweighed any probative value it might have; and that use of his no-contest pleas in this manner would be a violation of his due-process rights.

A hearing on the motion was held on June 3, and Officer Tumey testified regarding the similarity of the prior incidents to the current charge. In addition to the arguments presented in his written objection to the motion, Hicks argued that the State should not be allowed to introduce evidence of those convictions because they were the result of a no-contest plea. The court concluded, however, that by pleading no contest, Hicks "had to acknowledge that the State could meet its burden beyond a reasonable doubt" on those prior

2

similar crimes, and it entered an order admitting evidence of Hicks's past conduct under the pedophile exception to Rule 404(b).

A jury trial was held on June 27, 2024. At trial, when the State attempted to introduce evidence about the prior allegations supporting the no-contest pleas through the testimony of Investigator Tumey, Hicks objected on hearsay grounds. The State responded that the court had ruled the evidence admissible under Rule 404(b), but Hicks reiterated that Investigator Tumey's testimony would still be hearsay, and only those involved, i.e., the victims, could testify to those acts under the pedophile exception. Despite Hicks's argument, the court allowed the testimony, first finding that it was simply a "summation of the basic allegations" and that it did not consider it to be hearsay. The court stated, "That's the basis, the same basis for the facts that were given in court that created the basis for the convictions, so I'm going to allow [Investigator Tumey] to testify to it." Then, in overruling Hicks's subsequent hearsay objection the court stated that "the prior allegations come in under the exception that I noted and they formed a factual basis for the guilty and conviction of guilt in these charges." The court later added that it found the prior allegations were admissible under Rule 404(b) and that, because they formed the basis for his no-contest plea, they had the indicia of reliability necessary for admission under Arkansas Rule of Evidence 803. During this trial, the court allowed Hicks to testify why he pled no contest and allowed defense counsel to explain in closing that a no-contest plea was not an admission or denial of guilt and why Hicks might have pled no contest. This trial ended in a hung jury.

3

Between the first and second trials, for the first time, the State filed a pretrial motion to allow Investigator Tumey to testify under Rule 803(24)—the residual hearsay exception—regarding the factual basis for Hicks's no-contest pleas. Hicks filed a written objection to the motion, arguing that, because a no-contest plea is not an admission of guilt, it is not admissible under the residual hearsay exception. He further argued that the evidence the State sought to admit failed all three prerequisites for admissibility outlined in Rule 803(24). Accordingly, he asked that the State's motion be denied.

This motion was considered during an in-chambers discussion the morning of trial. At the hearing, defense counsel restated his hearsay objection. After hearing the arguments of counsel, the court allowed Investigator Tumey to testify to the facts surrounding the prior convictions. However, unlike the court's ruling in the first trial, the court limited Hicks's cross-examination of Investigator Tumey to the fact that the pleas were no-contest pleas or to explain to the jury why Hicks agreed to the pleas.

At trial, MV testified that, on the day of the alleged incident, Hicks was watching her while her mother went to the grocery store. MV stated they were sitting on a couch playing video games on their phones when Hicks moved closer to her and touched her breast over her clothing. When MV's mother returned, he moved away and asked MV not to tell anyone. MV testified this was the first and only time he touched her.

Investigator Tumey then testified that she investigated two similar prior sexual-assault allegations involving Hicks. She described when they occurred; the ages of the victims; and their relationship to Hicks. She testified that she was assigned to both investigations

following calls to the child-abuse hotline. Regarding MC1, she learned that Hicks was friends with MC1's parents. She also learned that Hicks was alone with MC1 at the back part of the home when the incident occurred. She relayed that the sexual abuse she investigated involved sexual contact with MC1's sex organs outside her clothing. She then testified that she received a second hotline call about six months later. She learned in this investigation that Hicks was friends with MC2's brother and was staying in the home with MC2 and her parents while he was waiting on a rental house. She detailed that MC2 and Hicks would go to the store together, watch movies, play video games, and ride four-wheelers around the home. She stated that the same type of abuse with MC1 was involved with MC2—"the touching, groping of her breast, and the vaginal area." She agreed that a common theme between the two investigations was "game-playing with these little girls." Following Tumey's testimony that Hicks was convicted of second-degree sexual assault in both cases and was placed on ten years' probation, the sentencing orders from the prior no-contest pleas were introduced into evidence.

Hicks testified in his own defense and denied ever touching MV. He explained that MV's mother had asked him to watch MV while she went to the store. He claimed he talked with MV's mother the entire time she was gone, except for the brief time she was checking out. Hicks testified that MV did not want him to leave after her mother returned and that he stayed until the other children returned home from school. He stated that he had been interested in MV's mother romantically but that he broke it off when she told him she was reconnecting with MV's father.

5

This time, the jury convicted Hicks, and he was sentenced to thirty years in the Arkansas Division of Correction. This appeal followed.

As stated above, Hicks raises three arguments: (1) there was insufficient evidence to support his conviction; (2) the circuit court erred in admitting hearsay evidence under the pedophile exception; and (3) a mistrial should have been granted. Although we find merit in his second point on appeal, we must first address his sufficiency-of-the-evidence argument because preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence before a review of trial errors. *Lester v. State*, 2024 Ark. App. 206, 687 S.W.3d 344.

With regard to his sufficiency argument, Hicks claims the State failed to prove sexual contact with MV. More specifically, he argues that there was no indication that the brief one-time touching as alleged by MV was for the purpose of sexual gratification. We disagree.

When reviewing a challenge to the sufficiency of the evidence, we must assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict, whether admitted properly or erroneously. *Cuevas-Flores v. State*, 2024 Ark. App. 451, 699 S.W.3d 156. We affirm a conviction if substantial evidence exists to support it. *Price v. State*, 2019 Ark. 323, 588 S.W.3d 1. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.* Witness credibility is an issue for the fact-finder, which may believe all or part of any witness's testimony and may resolve questions of

6

conflicting testimony and inconsistent evidence. *McKisick v. State*, 2022 Ark. App. 426, at 4, 653 S.W.3d 839, 843.

Arkansas Code Annotated section 5-14-125 (Supp. 2023) states that a person commits second-degree sexual assault if the person, being eighteen years of age or older, engages in sexual contact with another person who is less than fourteen years of age. "Sexual contact" means an act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female. Ark. Code Ann. § 5-14-101 (Supp. 2023). "Sexual gratification" is not defined in the statute, but the Arkansas Supreme Court has construed the words in accordance with their reasonable and commonly accepted meanings. *DeJohn v. State*, 2021 Ark. App. 495, at 3–4, 638 S.W.3d 32, 34. The State is not required to provide direct proof that an act is done for sexual gratification if it can be assumed that the desire for sexual gratification is a plausible reason for the act because sexual gratification is rarely capable of proof by direct evidence and must usually be inferred from the circumstances. *Compton v. State*, 2023 Ark. App. 587, at 8, 682 S.W.3d 348, 354. The jury is free to believe the State's version of the facts over the defendant's account, is not required to abandon common sense, and may draw reasonable inferences from the evidence. *Id.*

Here, MV testified that Hicks engaged in conduct, when she was under the age of fourteen, that would satisfy the definition of "sexual contact." Importantly, the facts presented here would permit a jury to infer that "sexual gratification" was a plausible reason for the conduct. MV testified that Hicks was babysitting her while her mother went to the

7

store; he moved closer to her on the couch while they were playing Roblox on their phones; he touched her chest area over her clothing for more than a brief period of time; he quickly withdrew his hand when her mother returned; and he told her not to tell anyone what he had done. While Hicks denied that any such touching occurred and claimed he was on the phone with MV's mother practically the entire time MV's mother was gone, the jury was not required to believe his testimony. Thus, when the evidence as presented is viewed in the light most favorable to the State, there was substantial evidence to support Hicks's conviction for second-degree sexual assault.

For his second point on appeal, Hicks argues that the court erred in admitting the prior sentencing orders and in allowing Investigator Tumey to testify regarding the factual basis for those no-contest pleas. He asserts that Investigator Tumey's testimony was inadmissible hearsay and did not fall within the residual hearsay exception to the hearsay rule. Hicks's argument is well taken.

As an initial matter, this court is certainly mindful of the additional trauma that may be inflicted on victims of crime when navigating our criminal justice system. This is especially true of victims of sexual abuse regardless of age.[1] However, no matter how compelling and understandable the desire to protect the victims of crime at all costs, especially children, our

---

[1] We note that the State is not required to present Rule 404(b) testimony of other victims in order to prove its charge of rape. Even standing alone, a rape victim's testimony constitutes substantial evidence to support a rape conviction. *Wesley v. State*, 2026 Ark. App. 74. Thus, the State must weigh the need for such testimony to obtain a conviction against the harm it might inflict on the prior victims.

courts have a duty to ensure that an accused is afforded a fair trial as guaranteed by our state and federal constitutions.[2] As such, we are constrained by our rules of evidence and are bound by precedent. Both dictate this outcome.

Second, we want to stress the unique nature of the situation before us. Investigator Tumey's testimony was elicited under the backdrop of a no-contest plea. Ordinarily, this evidence would be inadmissible under Rule 410 of the Arkansas Rules of Evidence. That rule provides:

> *Evidence of a plea of nolo contendere, whether or not later withdrawn*, and of a plea, later withdrawn, of guilty or admission to the charge, or of an offer to plead to the crime charged or any other crime, *or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any* civil or *criminal action, case, or proceeding against the person who made the plea or offer*.

(Emphasis added.) Hicks, however, did not specifically mention Rule 410 below, nor has he sufficiently raised it on appeal. In *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), the supreme court noted that Arkansas does not recognize the plain-error rule, meaning that the

---

[2]To this end, the Maryland Court of Appeals said it best:

> Even though there are sound public policy reasons for limiting a child victim's exposure to a potentially traumatizing courtroom experience, we nonetheless must be faithful to the Constitution's deep concern for the fundamental rights of the accused. Although the Supreme Court has recognized that the interest of protecting victims may triumph over some rights protected by the Confrontation Clause, it also has concluded that such interests may never outweigh the explicit guarantees of the Clause, including the "right to *meet face to face* all those who appear and give evidence *at trial*."

*State v. Snowden*, 867 A.2d 314, 329 (Md. App. Ct. 2005) (quoting *Coy v. Iowa*, 487 U.S. 1012, 1019–21 (1988)) (emphasis in original).

appellant must bring the alleged error to the attention of the circuit court before it will be considered on appeal. Moreover, because any basis for reversing a case on appeal should originate in the arguments advanced by the appellant, not from arguments created by appellate judges, we cannot reverse on this basis. *See Houston v. State*, 82 Ark. App. 556, 120 S.W.3d 115 (2003).

As to Hicks's argument that the court erred in admitting evidence of the prior allegations under the residual hearsay exception, the State responds that the "pedophile exception" to Rule 404(b) is controlling. We agree that the similarity between the prior allegations and MV's allegations before the jury would likely be the type of evidence to fall within the purview of the pedophile exception. However, whether the prior incidents were sufficiently similar to allow for their introduction pursuant to the pedophile exception does not end the inquiry. Rather, the crux of the issue presented here is the manner in which the State attempted to get this proof before the jury. The pedophile exception only overcomes a character-evidence objection, not a hearsay objection. 4 Clifford S. Fishman, *Jones on Evidence* § 20:15 (7th ed. 2003). That is, the mere fact that the evidence falls within the pedophile exception and, thus, is deemed relevant will not render the evidence automatically admissible because the pedophile exception does not override the hearsay rules established under the Arkansas Rules of Evidence. Instead, the rules for relevancy and hearsay operate independently of each other, and both must be satisfied for evidence to be admissible. That is, even if evidence is relevant, it may still be excluded if it constitutes inadmissible hearsay.

The issue here is that the State did not attempt to introduce the evidence of Hicks's "prior bad acts" directly through the testimony of the prior victims or from eyewitnesses to the acts.[3] Instead, the State sought to introduce that evidence through the testimony of Investigator Tumey. Investigator Tumey's knowledge of those "prior bad acts" was acquired through her investigation of the claims of the prior victims, and her knowledge could only have been obtained from statements made by them to her. Investigator Tumey was not herself a victim, nor was she in a position to witness any of the prior acts at the time they occurred.

Arkansas Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[4] As such, Investigator Tumey's testimony clearly falls within the definition of hearsay. Thus, the issue before us is whether Investigator Tumey's testimony

---

[3]Admittedly, our courts have allowed testimony from nonvictim witnesses under the pedophile exception. For example, in *Hamm v. State*, 365 Ark. 647, 232 S.W.3d 463 (2006), the testimony of a witness who observed concerning conduct involving the defendant and a child was admitted under the pedophile exception. However, unlike Investigator Tumey's testimony, that testimony was based on *personal observations* and not hearsay. The cases cited by the dissent, *Lukach v. State*, 310 Ark. 119, 835 S.W.2d 852 (1992); *McGuire v. State*, 288 Ark. 388, 706 S.W.2d 360 (1986); and *Chappell v. State*, 18 Ark. App. 26, 710 S.W.2d 214 (1986), all predate the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004).

[4]An out-of-court statement is not hearsay if it is offered, not to prove the truth of the matter asserted, but to show the basis of action or course of conduct. *Martin v. State*, 316 Ark. 715, 875 S.W.2d 81 (1994). As evidenced by the State's arguments at trial, Investigator Tumey's testimony was clearly admitted to prove the truth of the matter asserted and as substantive evidence of Hicks's alleged proclivities rather than to show a basis for Hicks's actions or course of conduct.

falls within one of the exceptions to the hearsay rule so that she, rather than the victims or witnesses, could testify to the factual allegations of the prior acts.

The State argued both below and now on appeal that Investigator Tumey's testimony was admissible under Rule 803(24), more commonly referred to as the residual hearsay exception. Rule 803(24) states as follows:

> (24) *Other Exceptions*. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (i) the statement is offered as evidence of a material fact; (ii) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (iii) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

We hold that Investigator Tumey's testimony in this case fails the second requirement for admissibility under Rule 803(24): whether the statement is more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts.[5] Obviously here, the testimony of the victims themselves would be more probative than the testimony of the investigator, who obtained the information from the

---

[5]Because we find that the evidence fails to satisfy the second prerequisite to admissibility, we do not address the other two.

victims. The State in this instance made no attempt to explain why it could not procure their

testimony through reasonable efforts.[6]

Moreover, this provision was not intended to throw a door wide open for the entry

of judicially created exceptions to the hearsay rule. To the contrary, this exception is to be

narrowly construed.[7] *See Hill v. Brown*, 283 Ark. 185, 188, 672 S.W.2d 330, 332 (1984). Our

---

[6]The dissent contends Investigator Tumey's testimony is the most probative because she was the only person who could testify as to the similarity of all three incidents. We disagree. The similarity of the three incidents is only required for the circuit court to determine the relevance and admissibility of the evidence under the pedophile exception. It is not, however, an element of the sexual-assault charge the State sought to prove against the appellant. The relevant sexual-assault statute (Arkansas Code Annotated section 5-14-125) only requires proof that the appellant is eighteen years of age or older and that he engaged in sexual contact with a child under the age of fourteen. Thus, it is not the role or duty of the investigator to establish the similarities among the incidents for the jury. Second, the victims are the proper persons to testify about their experiences, subject to cross-examination, and it is for the jury to determine whether the evidence is credible and whether it demonstrates the defendant's proclivity. Finally, unlike the direct testimony of a Rule 404(b) victim who can be cross-examined on the truthfulness and veracity of his or her testimony, the testimony of a nonvictim or other witness without direct personal knowledge of the incidents in question who merely attempts to summarize the Rule 404(b) victim's testimony is not subject to such cross-examination, and as such, the witness's testimony would likely run afoul of the Sixth Amendment's Confrontation Clause.

[7]Congress's intent for this provision to be narrowly construed is made plain by this paragraph in the report of the Senate Advisory Committee:

*It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances.* The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b). The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by legislative action. It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care, reflection and caution than the

supreme court carefully noted in *Hill* that all the common-law exceptions to the hearsay rule are based either on necessity or on some compelling reason for attaching more than average credibility to the hearsay, and any new exception must have circumstantial guarantees of trustworthiness equivalent to those supporting the common-law exceptions.

Here, our supreme court has set forth those situations in which evidence that is technically hearsay will be deemed admissible. *See* Ark. R. Evid. 803 & 804. It has even specifically identified circumstances in which child hearsay is permitted at trial. *See, e.g.*, Ark. R. Evid. 803(25) & 803(b)(6) & (7). Yet it has not seen fit to include an exception that would generally allow investigators, social workers, parents, or other parties to testify in place of victims of sexual or physical abuse. This, despite its awareness of the trauma that requiring a victim to testify regarding his or her abuse could cause; and not to mention the Confrontation Clause problems allowing such testimony would necessarily create. There is simply no overriding necessity to allow an investigator to testify in this situation, and our supreme court has not seen fit to permit it. If we were to allow such testimony to be admitted under the residual hearsay rule, we would not be narrowly construing the exception. Moreover, were we to recognize an overriding necessity as tacitly argued by the dissent, we would be placing this new exception in direct conflict with the Sixth Amendment's

---

courts did under the common law in establishing the now-recognized exceptions to the hearsay rule.

S. Rep. No. 93–1277, 93d Cong., 2d Sess. 1, 20, *reprinted* in 1974 U.S. Code Cong. & Ad. News 7051, 7066 (emphasis added).

requirement that criminal defendants be allowed to confront the witnesses against them in a criminal trial.

The State, nevertheless, asserts that the prior allegations of sexual abuse testified to by Investigator Tumey have a circumstantial guarantee of trustworthiness because those allegations formed the factual basis of his prior convictions and because Hicks agreed at the plea hearing that a jury could convict him if those allegations were proved at trial. It is critical to our analysis that Hicks's statements were made as part of a no-contest plea, not a guilty plea. A plea of nolo contendere is one by which the defendant does not contest or admit guilt. *Martin v. State*, 2015 Ark. 147, at 4 n.2, 460 S.W.3d 289, 292 n.2 (citing *Black's Law Dictionary* 1269 (9th ed. 2009); *Patterson v. Odell*, 322 Ark. 394, 909 S.W.2d 648 (1995) (describing the plea as one that may be entered with leave of court to a criminal indictment by which the defendant does not admit or deny the charges, though a fine or sentence may be imposed pursuant to it)); *see also North Carolina v. Alford* 400 U.S. 25, 35 n.8 (1970) ("Throughout its history . . . the plea of nolo contendere has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency."). Thus, as the record indicates, Hicks did not admit the truthfulness of the allegations; rather, he admitted only that, if the victims' allegations were presented to a jury, a jury could find him guilty. As such, there is no circumstantial guarantee of trustworthiness as required under the residual hearsay exception. Accordingly, we do not agree with the State that Hicks's statements at the no-contest plea hearing afforded or imbued

the evidence with the degree of trustworthiness necessary for its admission under the residual hearsay exception.

Nor do we find that the admission of this evidence was harmless error. It is well settled that, even when a circuit court errs in admitting evidence, we will affirm the conviction and deem the error harmless if there is overwhelming evidence of guilt and the error is slight. *Rodriguez v. State*, 372 Ark. 335, 276 S.W.3d 208 (2008). To determine if the error is slight, we look at whether the defendant was prejudiced by the erroneously admitted evidence. *Id.* Prejudice is not presumed, and this court will not reverse a conviction absent a showing of prejudice by the defendant. *Id.* When the erroneously admitted evidence is merely cumulative, there is no prejudice, and a conviction will not be reversed for harmless error in the admission of evidence. *Id.* The evidence here was not merely cumulative—the specific evidence explaining the prior incidents came from Investigator Tumey's inadmissible hearsay testimony. As such, we do not consider the introduction of the evidence to be harmless.

Because we are reversing this case and remanding it for a new trial, we do not address the remaining issues because they will be decided anew in any retrial.

For the reasons set forth above, we reverse and remand.

Reversed and remanded.

ABRAMSON, VIRDEN, HARRISON, and TUCKER, JJ., agree.

BARRETT, J., dissents.

16

STEPHANIE POTTER BARRETT, Judge, dissenting. The circuit court acted well within its discretion in admitting Investigator Tumey's testimony under Arkansas Rule of Evidence 803(24) and the pedophile exception to Arkansas Rule of Evidence 404(b). The pedophile exception serves the critical purpose of allowing prosecutors to introduce evidence of a defendant's depraved sexual instinct toward children, which is uniquely probative in child sexual-abuse cases where the defendant's specific proclivity and pattern of conduct with vulnerable victims is directly relevant to proving the charged offense. The majority's opinion departs from settled precedent governing the admissibility of evidence in these cases involving sexual abuse of children and, in doing so, imposes an unnecessarily restrictive framework that undervalues the probative force of the pedophile exception. This approach not only misconstrues our evidentiary rules but also risks discouraging the presentation of evidence that is often essential to establishing the truth in cases where serial abuse, by its inherent nature, occurs almost exclusively outside the presence of witnesses. Therefore, I must dissent.

The residual hearsay exception under Arkansas Rule of Evidence 803(24) affords trial courts limited flexibility to admit otherwise inadmissible hearsay when the evidence bears sufficient guarantees of trustworthiness and is necessary to the presentation of the case. *See Blaylock v. Strecker*, 291 Ark. 340, 724 S.W.2d 470 (1987). Although the exception must be narrowly construed, it is not to be rendered a nullity. The Arkansas Supreme Court has stated that we will not reverse a circuit court's ruling on a hearsay question unless the appellant can demonstrate an abuse of discretion. *Martin v. State*, 346 Ark. 198, 57 S.W.3d

136 (2001); *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000); *Bragg v. State*, 328 Ark. 613, 946 S.W.2d 654 (1997); *Flores v. State*, 348 Ark. 28, 38, 69 S.W.3d 864, 870 (2002).

The majority quotes the cautionary language that the residual hearsay exception "was not intended to throw open a wide door for the entry of judicially created exceptions to the hearsay rule" and is instead "to be narrowly construed." *See Hill v. Brown*, 283 Ark. 185, 188, 672 S.W.2d 330, 332 (1984). The accompanying directive from the Senate Advisory Committee states the exception is to be employed "very rarely, and only in exceptional circumstances." *Id.* at 188–89, 672 S.W.3d at 332. I would be remiss if I did not observe that few circumstances could be more exceptional than the protection of this state's minor children from being retraumatized by the judicial process itself—a consequence that today's decision unnecessarily permits.

I am deeply concerned that the majority's holding effectively requires minor victims of sexual abuse to testify in order for prior convictions to be admissible under the pedophile exception. Arkansas courts have long recognized the unique vulnerability of child victims and have approved safeguards designed to protect them from psychological harm, including videotaped depositions, out-of-court statements, and testimony by investigators regarding a child's disclosures. *See, e.g.*, *Lukach v. State*, 310 Ark. 119, 835 S.W.2d 852 (1992); *McGuire v. State*, 288 Ark. 388, 706 S.W.2d 360 (1986); *Chappell v. State*, 18 Ark. App. 26, 710 S.W.2d 214 (1986).[1] These protections reflect a deliberate effort to balance defendants' rights with

---

[1]While the majority is correct these cases were decided prior to *Crawford v. Washington*, 541 U.S. 36 (2004), its statement ignores the fact these cases remain instructive and

the need to protect children and encourage the reporting of sexual abuse. By narrowing the availability of Rule 803(24) in this context, the majority does a disservice to survivors of sexual abuse in Arkansas. Its approach risks chilling reports of abuse and undermining the State's ability to prosecute serial offenders—outcomes plainly inconsistent with precedent, public policy, and the rules of evidence.

The majority asserts that "[t]he issue of whether the prior incidents were sufficiently similar to allow for their introduction pursuant to the pedophile exception is not before us" and that the only question presented is the "manner in which the State attempted to get this proof before the jury." I respectfully disagree. While it is correct that the pedophile exception does not override the hearsay rules, it does not follow that similarity and context can be disregarded in evaluating admissibility under Rule 803(24). The majority seems to conflate the circuit court's function in determining admissibility with the jury's fact-finder role. It was the circuit court, not the jury, that determined the prior convictions were sufficiently similar to be admissible under Arkansas Rule of Evidence 404(b)'s pedophile exception. That legal determination was made before the evidence was presented. The jury was not asked to decide

---

precedential. *Crawford* reoriented the Confrontation Clause analysis by rejecting the reliability framework of *Ohio v. Roberts*, 448 U.S. 56 (1980), and adopting a testimonial-based approach, but it did not abrogate every pre-*Crawford* decision touching upon hearsay or confrontation concerns. To the extent earlier cases addressed evidentiary principles, admissibility under recognized exceptions, or procedural preservation issues independent of the *Roberts* reliability test, they retain precedential force and value. Importantly, those decisions have not been expressly overruled or given negative treatment with respect to their impact on the Confrontation Clause. Accordingly, they remain binding authority unless and until expressly displaced, and they continue to inform the application of evidentiary rules in a manner consistent with *Crawford's* framework.

whether the pedophile exception applied, nor was it tasked with ruling on admissibility. However, once the circuit court determined the evidence met the requirements of Rule 404(b), the jury was entitled to hear the limited testimony needed for context. Investigator Tumey's testimony explained the nature of the prior bad acts so the jury could understand why those facts were relevant and could determine what weight should be given to them. Evidence admitted under the pedophile exception serves a distinct and narrowly defined purpose—to show proclivity toward a specific class of victims—and without contextual testimony, the jury would be left with bare convictions devoid of meaning or, worse, confused as to their permissible use. Investigator Tumey's testimony did not invite the jury to make an admissibility determination; it provided the necessary context for the jury to evaluate the evidence the court had already deemed admissible.

While relevancy and hearsay are distinct concepts, they do not operate in isolation. The rationale for recognizing the pedophile exception is that such evidence helps to prove the depraved instinct of the accused. *Hamm v. State*, 365 Ark. 647, 652, 232 S.W.3d 463, 468 (2006). The basis of the pedophile exception to Rule 404(b) is our acceptance of the notion that evidence of sexual acts with children may be shown, as that evidence demonstrates a particular proclivity or instinct. *Id.* For the pedophile exception to apply, there must be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *Id.* When evidence is admitted under the pedophile exception, the prosecution may introduce testimony about the specific circumstances and details of prior sexual abuse. In *Woods v. State*, the court permitted evidence of the

defendant's prior child-molestation conviction under the pedophile exception, even though the conviction occurred fifteen years before trial. 2013 Ark. App. 739. The rationale is that "such evidence helps to prove the depraved sexual instinct of the accused" and is "particularly probative when it involves, as here, the same victim and the same course of conduct." *Davidson v. State*, 363 Ark. 86, 1 n.1, 210 S.W.3d 887, 887 n.1 (2005). As noted in *George v. State*, "unlike a Rule 404(b) prior conviction, a prior conviction admitted pursuant to Rule 609(a) for impeachment purposes may not include collateral details and circumstances surrounding the conviction." 306 Ark. 360, 374, 813 S.W.2d 792, 800 (1991) (Dudley, J., dissenting) (supplemental opinion on denial of rehearing). This means that when a conviction is admitted solely for impeachment under Rule 609, the jury should not hear extensive contextual details about the underlying facts of the prior offense. However, when the pedophile exception applies, courts permit testimony regarding the specific acts and circumstances of prior sexual conduct with children because this evidence serves the substantive purpose of demonstrating the defendant's propensity for such conduct with minors. *Ralston v. State*, 2019 Ark. App. 175 (2019).

While the majority disagrees that the jury can hear contextual information regarding prior convictions, it further argues that even if the evidence was admissible under Rule 404(b), it is not allowed in the form of hearsay under the exception to hearsay, Rule 803(24). The majority reasons that Officer Tumey's testimony is not the most probative evidence and that the testimony of child victims themselves is the most probative. The circuit court must determine that the testimony bore sufficient circumstantial guarantees of trustworthiness,

21

was offered to establish a material fact, and was more probative on the point of similarity than any other evidence the State could reasonably procure to be admissible under Rule 803(24). In this case, the circuit court acted well within its discretion in finding that Tumey's testimony met all three of these factors. Regarding the majority's position on the most probative evidence, Tumey investigated all three offenses. While each minor victim could testify regarding his or her individual experience, none could testify to the similarities among the offenses. Tumey was the only witness capable of providing a comprehensive, comparative account of the victims' ages, Hicks's role as a trusted family friend and babysitter, his grooming behavior through child-centered activities, and the nature of the sexual contact. Requiring the State to present individual victim testimony in place of the investigator would not yield more probative evidence on similarity and context; rather, it would needlessly fragment the proof and impose a requirement that the pedophile exception to Rule 404(b) does not demand—namely, that prior convictions be established through the testimony of the victims themselves.

Additionally, the majority's reliance on *Hill*, 283 Ark. 185, 672 S.W.2d 330, to reject admissibility is misplaced. *Hill* does not prohibit admission under Rule 803(24); it requires that the hearsay bear circumstantial guarantees of trustworthiness equivalent to those underlying recognized exceptions. That requirement is satisfied here. Investigator Tumey's testimony concerned prior sexual offenses that had already resulted in final judgments of conviction. The factual bases for those convictions were presented in formal judicial proceedings, subjected to the safeguards attendant to criminal adjudication, and

memorialized in sentencing orders entered by a court of competent jurisdiction. Those circumstances provide a far stronger guarantee of trustworthiness than many statements routinely admitted under traditional hearsay exceptions. To accept the majority's interpretation of *Hill* would render Rule 803(24) largely ineffective in cases involving prior adjudicated conduct, notwithstanding the rule's express recognition that reliability may arise from circumstances other than live testimony. Here, the existence of multiple prior convictions involving substantially similar conduct is itself a compelling circumstantial guarantee of trustworthiness. The circuit court properly recognized that reality, and its ruling was well within the discretion *Hill* preserves rather than restricts.

The majority's characterization of Investigator Tumey's testimony as wholly derivative of victim statements is also incomplete. Tumey interviewed Hicks during the previous investigations underlying the prior convictions, and portions of her testimony were based on Hicks's own statements. Statements by a party-opponent are expressly excluded from the definition of hearsay under Arkansas Rule of Evidence 801(d)(2)(i). In addition, her testimony reflected her personal observations and investigative findings made in the course of her duties as the investigating officer. The majority attempts to distinguish *Hamm*, 365 Ark. 647, 232 S.W.3d 463, by noting that the witness in that case testified on the basis of personal observations rather than hearsay. That distinction does not withstand scrutiny when applied to the record before us. As stated, Investigator Tumey's testimony included her own investigative observations and Hicks's admissions, which are not hearsay. Moreover, law enforcement testimony often necessarily synthesizes observations, interviews, and

23

documentary evidence to explain patterns and similarities among offenses. The presence of some hearsay components does not render such testimony inadmissible in its entirety, particularly where, as here, the circuit court carefully limited the testimony to facts relevant to similarity and found it admissible under Rule 803(24). Therefore, *Hamm* supports, rather than undermines, the circuit court's ruling.

The majority suggests that permitting Investigator Tumey's testimony in lieu of live testimony from the prior victims "would likely run afoul of the Sixth Amendment's Confrontation Clause." Respectfully, this argument is misplaced as well. Hicks was already adjudicated guilty of the prior offenses underlying Investigator Tumey's testimony. The fact that those convictions resulted from no-contest pleas does not alter their legal effect as final judgments of conviction. A plea of nolo contendere permits entry of judgment and imposition of sentence, and once judgment is entered, the defendant stands convicted of the offense. *See Swift v. State*, 2018 Ark. 74, 540 S.W.3d 288. The Confrontation Clause protects a defendant's right to confront witnesses who bear testimony against him concerning the charged offense—not to relitigate the factual basis of prior final convictions that are introduced for a limited evidentiary purpose.

Investigator Tumey was not presented as a surrogate witness to prove the elements of the charged sexual assault. Her testimony was offered solely to explain the context and similarity of Hicks's prior adjudicated offenses. The jury was not asked to determine whether Hicks committed those prior acts; that determination had already been made by a court of competent jurisdiction. Accordingly, the confrontational concerns raised by the majority are

24

misplaced. To accept the majority's reasoning would effectively require the State to recall minor victims of sexual abuse—sometimes years after the fact—not to prove the defendant's guilt anew, but to reconstruct the factual bases of convictions already finalized, despite the pedophile exception's express purpose of permitting prior convictions to be introduced to demonstrate a pattern of behavior and a proclivity for a particular class of victims. Such a requirement finds no support in the Confrontation Clause and runs counter to both precedent and public policy. The Sixth Amendment does not compel the retraumatization of child victims in order to admit evidence of prior adjudicated conduct for a narrow evidentiary purpose. The circuit court properly balanced these considerations, and its ruling does not implicate the Confrontation Clause.

The majority's harmless-error analysis rests on the faulty premise that Investigator Tumey's testimony was the sole means by which the jury learned of the prior incidents. That premise ignores the fact that the prior sentencing orders themselves were independently admissible and would have been introduced regardless of Investigator Tumey's testimony. Absent that testimony, the sentencing orders would have come into evidence without contextual detail—precisely the circumstance the law contemplates when prior convictions are admitted for limited purposes. Any alleged error, therefore, did not inject otherwise inadmissible evidence into the case; at most, it supplied background to convictions the jury was already entitled to consider in determining what weight should be given to it. Under these circumstances, the testimony was, by definition, cumulative of properly admitted

evidence, and its admission cannot reasonably be said to have prejudiced the defendant or affected the verdict.

I also write to express concern with the majority's inclusion of Arkansas Rule of Evidence 410. Neither party argued the applicability of Rule 410 below or on appeal, and the issue was not briefed, preserved, or otherwise presented for our review. By addressing Rule 410 sua sponte, the majority ventures beyond the resolution of the case before it and into the realm of advisory-opinion making. Our courts have long held that the appellate review is limited to issues actually raised and developed by the parties and that issuing advisory opinions on hypothetical or unargued questions is strictly prohibited. *See Potter v. City of Tontitown*, 371 Ark. 200, 205, 264 S.W.3d 473, 478 (2007). The inclusion of Rule 410 in the majority's analysis does nothing to resolve the issues properly before us and instead risks creating confusion in an area of the law that was neither contested nor necessary to the disposition of this appeal.

The majority's decision today does more than misapply the law—it risks inflicting real and lasting harm on survivors of abuse of any form. By erecting heightened barriers to admissibility and discounting evidence that our precedent has long recognized as probative, the majority sends a troubling message to victims whose credibility already faces unjust scrutiny. The law should not operate in a manner that silences victims, especially children, from seeking justice. Because the majority's holding undermines those principles and threatens to erode the protections our jurisprudence has afforded to survivors, I must dissent.

*Vicki Lucas*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.